USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 01/02/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMEL MCLEAN *on behalf of* J.N.M. A MINOR,

Plaintiff,

-against-

SOCIAL SECURITY ADMINISTRATION,

Defendant.

17-cv-06978 (CM) (KHP)

**REPORT AND RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
3/6/19

**TO: THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Omel McLean filed this action after his request for documents pursuant to the Freedom of Information Act ("FOIA") went unanswered by the Social Security Administration ("SSA"). Since the filing of this action, the SSA has provided documents to Mr. McLean as he originally requested. At issue are Mr. McLean's contentions that (1) other documents likely exist and should have been located and produced and (2) the SSA has acted in bad faith in responding to his FOIA request. The SSA moves for summary judgment on the ground that it has met its obligation to conduct reasonable searches for the documents Plaintiff requested in his FOIA request and no further relief is therefore warranted. For the reasons set forth below, this Court respectfully recommends that the SSA's motion (Doc. No. 37) be GRANTED.

MEMO ENDORSED

**BACKGROUND**

On May 11, 2017, Plaintiff mailed a FOIA request to the SSA's Laconia Avenue district office. (Doc. No. 41, Affirmation of James Baker ("Baker Aff.") ¶ 10.) The purpose of the FOIA request was to obtain information concerning Plaintiff's son's Supplemental Security Income ("SSI") benefits and the SSA's decision to release certain of those benefits to a relative (a

3/6/2019
No objections have been filed to this Report and the time for filing has passed. After review, the Court adopts the Report as its opinion, follows the Recommendation and grants ~~dism~~ the SSA's motion. Enter judgment dismissing case
Colleen McMahon

grandmother) who was, for a time, a representative payee in charge of disbursing the SSI payments for Plaintiff's son's benefit. (Doc. No. 42, Declaration of Omel McLean, Jr. ("McLean Decl.") ¶¶ 1-2, 4, 6.) Plaintiff was concerned that his son's grandmother used the funds for her personal benefit, and Plaintiff raised his concerns with the SSA. As a result, the SSA froze payments for a period of time. However, without Plaintiff's approval, the SSA later released the frozen funds to the grandmother, and some of the money disappeared. (*Id.* ¶¶ 7-9, 12-18.)

In contemplation of potential litigation against the SSA,[1] Plaintiff sought documents reflecting communications and other contact between the SSA and the grandmother, as well as communications and other contact between the SSA and Plaintiff, concerning Plaintiff's son and his benefits. (Baker Aff. ¶ 10; Doc. No. 1.) The FOIA request sought documents for the period from June 1, 2008 through the present – the relevant time period regarding the administration of the benefits when the grandmother was the representative payee through Plaintiff's complaint about her administration of the benefits and the release of funds to the grandmother after Plaintiff's complaint about her handling of the funds.

There is a dispute as to whether the FOIA request was received. For purposes of this motion, however, the Court assumes the request was received on May 15, 2017. (*Id.*) The SSA did not respond to the request in a timely manner.

Because he received no response to his FOIA request, Plaintiff commenced this lawsuit on September 13, 2017. (Doc. No. 1.) Plaintiff attached a copy of his FOIA request to the complaint. Thereafter, the SSA searched its records and produced 669 pages of documents

---

[1] In the complaint, Plaintiff states that the SSA negligently failed to investigate or monitor the activities of the grandmother when she was his son's representative payee, resulting in the misuse and loss of benefits worth approximately $28,0000. (Doc. No. 1, Complaint ¶ 10.)

responsive to the request. (Baker Aff. ¶ 11.) After reviewing the production, Plaintiff questioned its completeness because it contained no documents reflecting any in-person meetings between Plaintiff and SSA personnel or the grandmother and SSA personnel, telephone communications between the SSA and Plaintiff or the grandmother, or internal communications between or among SSA employees about the matter. (*Id.* ¶¶ 11-12.) Plaintiff's counsel therefore requested a follow-up search.

The SSA then conducted a second search of its records and located additional responsive documents, which it produced. (*Id.* ¶ 13.) Still missing, however, were records pertaining to an in-person meeting between Plaintiff and the SSA in the fall of 2008, any approval for the freezing of payments of Plaintiff's son's benefits, Plaintiff's allegation of wrongdoing by the grandmother or her response to that accusation, any investigation of Plaintiff's complaint, and a January 27, 2016 letter from the SSA to Plaintiff (never received by Plaintiff) stating that the SSA had determined that the relative had not misused Plaintiff's son's benefits. (*Id.* ¶ 14.)

To ensure that the SSA had exhausted its search, Plaintiff's counsel sought an affidavit from an SSA representative stating that there were no additional records located and being withheld. Counsel for the SSA indicated it would provide a declaration stating that the agency "did not find any additional documents responsive to the FOIA request beyond what was provided in the two productions." (*Id.* ¶¶ 15-16.)

In connection with its motion for summary judgment, the SSA has provided the sworn declaration of Raymond Egan concerning its search for and production of documents responsive to Plaintiff's FOIA request. Egan is the Assistant Regional Commissioner for

Management and Operations Support for Region II of the SSA and is responsible for overseeing the staff of the Management and Operations Support for Region II of the SSA, which covers New York. (Doc. No. 38, Declaration of Raymond Egan ("Egan Decl.") ¶ 1.) The following facts, which are not disputed, are set forth in Egan's Declaration.

- The SSA maintains its records electronically. (*Id.* ¶¶ 10-11.)
- SSA staff searched for records responsive to plaintiff's FOIA request by searching various data systems maintained by the SSA including its Claims File Record Management System, Online Retrieval System, Visitor Intake Process, and Customer Service Record. (*Id.* ¶ 13.)
- The temporal scope of the search covered records pertaining to the period from June 1, 2008 to February 21, 2018. (*Id.*)
- To locate records responsive to the FOIA request, the SSA searched for records associated with the Social Security Numbers of Plaintiff, Plaintiff's son, and the grandmother. (*Id.* ¶ 14.)
- According to the SAA, "[s]earches conducted by Social Security Number yield the most accurate results, as some claimants go by different names, or the same name could be shared by multiple claimants. SSA conducts searches using other filters, such as name, interview topic, or date range, when SSA does not have the applicable Social Security Numbers." (*Id.*)
- The systems searched contain records of benefit claim files and supporting documents, copies of notices mailed by SSA, information about office visitors and appointments (including dates and interview topics when a member of the public visits a field office or calls), management information for area, regional and national reports, and information reflected in the Visitor Intake Process system. (*Id.* ¶¶ 15-18, 21.)
- The SSA also searched Visitor Intake Process records at the South Bronx and North Bronx SSA field offices and Customer Service Queries to locate documents responsive to the FOIA request. (*Id.* ¶ 22.) The South and North Bronx office each independently searched the various systems referenced above for information related to meetings between the SSA and the grandmother and Plaintiff since June 1, 2008. (*Id.* ¶ 24.)
- The SSA also contacted the New York Teleservice Center for relevant and responsive information. This Center handles and documents calls to the SSA National 800 Number. (*Id.* ¶ 26.)
- Following its searches, the SSA released 669 pages of documents to Plaintiff, a certain number of which were redacted. (*Id.* ¶ 27.)
- After that production, in response to additional inquiries from Plaintiff's counsel, the SSA searched the same systems referenced above and found an additional 127 pages of responsive documents, which also were produced, some in redacted form. (*Id.* ¶ 28.)

- At Plaintiff's request, and after submission of a Consent for Release of Information, the SSA unredacted and reproduced documents that had previously been redacted. (*Id.* ¶ 30.)
- Egan affirmed that in his judgment, the record systems searched were the ones most reasonably likely to contain responsive records regarding "Social Security benefits due to J.N.M. since June 1, 2008, including, but not limited to, any contact, written or otherwise, between SSA and his representative payees (or attorneys or representatives for such representative payees) pertaining to such benefits." (*Id.* ¶ 29.)
- Egan also affirmed that "SSA has not located any additional records responsive to the FOIA Request" and "has not withheld in full any responsive documents." (*Id.* ¶ 33.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

In FOIA actions such as this, agency affidavits alone may support a grant of summary judgment. *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 317 (S.D.N.Y. 2015); *see also Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). The affidavits must demonstrate that the agency's search for documents was adequate. *Long*, 692 F.3d at 190 (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)). Agency affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (internal quotation marks and citations omitted).

A search is adequate if it was "reasonably calculated to discover" documents responsive to the FOIA request. *Grand Cent. P'ship*, 166 F.3d at 489. Adequacy is measured by method, not the results of the search. *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014). Perfection, and discovery and production of every document extant, is not required. *Platsky v. Food & Drug Admin., Div. of Freedom of Info.*, No. 13-cv-6250 (SLT) (RLM), 2014 WL 7391611, at *4 (E.D.N.Y. Dec. 24, 2014), *aff'd sub nom. Platsky v. Food & Drug Admin.*, 642 F. App'x 63 (2d Cir. 2016) (summary order). Provided the agency has conducted a reasonable search, it will have met its obligations under FOIA and be entitled to summary judgment on this issue. *Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002).

## DISCUSSION

### *I. Adequacy of the SSA's Search for Documents Responsive to Plaintiff's FOIA Request*

In this case, the SSA has provided a sworn declaration from a knowledgeable representative concerning its search for records responsive to Plaintiff's FOIA request. Significantly, Plaintiff does not dispute "that the agency's search was, at least ultimately, sufficiently thorough." (Doc. No. 40, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Br.") at 6.) The agency searched in the data systems that it deemed most likely to contain documents responsive to the FOIA request. (Egan Decl. ¶¶ 13-14, 22-23, 26, 29.) The temporal scope of the search was reasonably tailored to capture records responsive to the request, since all of the communications and records would have dated from a period within that searched by the agency. The methodology of the search – the use of the Social Security Numbers of Plaintiff, Plaintiff's son, and the grandmother

– was reasonably calculated to recover records pertaining to Plaintiff's son's benefits and representative payees. Indeed, according to the agency affiant, the SSA typically uses Social Security Numbers to retrieve records from its system, and the use of this search methodology typically yields the most accurate results. (*See id.* ¶ 14.) The agency also incorporated input from Plaintiff's counsel to conduct a second search, which yielded some additional responsive documents. (*Id.* ¶ 28.) *See, e.g., Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (an agency's additional searches "suggest a stronger, rather than a weaker, basis for accepting the integrity of the search") (internal quotation marks and citations omitted); *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 370, 372 (D.C. Cir. 1978) (discovery of additional documents not inconsistent with district court's finding that search was thorough); *Conti v. U.S. Dep't of Homeland Sec.*, No. 12-cv-5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) (accord).

Plaintiff does not contest the adequacy of the SSA's methodology or its search parameters but rather argues that the agency failed to locate documents that Plaintiff believes exist. It is unclear whether the documents that Plaintiff's counsel believes exist in fact exist and why, if they exist, the SSA did not locate them. Nevertheless, for purposes of determining whether the agency has fulfilled its obligation to conduct an adequate search, the Court evaluates the agency's methods rather than its results. *N.Y. Times Co.*, 756 F.3d at 124. Here, the agency declaration describes a reasonable search of records. To the extent the agency failed to document an investigation of Plaintiff's complaint about the administration of his son's benefits and concerns about the grandmother's misuse of the funds, those failures may result in liability in any action brought by Plaintiff against the agency. At bottom though, Plaintiff

does not question the reasonableness of the search. That is, he does not question that the data systems searched were the most logical to search for responsive documents. He does not question the use of Social Security Numbers to search for responsive documents. He does not question the temporal scope of the search. Put simply, no genuine issue of material fact exists as to the adequacy of the SSA's search for documents responsive to Plaintiff's FOIA request.

***II. Presumption of Good Faith***

In order for an agency affidavit to establish the adequacy of a search pursuant to a FOIA request, the affidavit must be submitted in good faith. *Grand Cent. P'ship*, 166 F.3d at 488-89. Agency affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* at 489. Plaintiff argues that the Egan Declaration is not entitled to a presumption of good faith because it fails to state that the SSA has "produced all the locatable document within the scope of plaintiff's FOIA request." (Doc. No. 46, Plaintiff's Sur-Reply Memorandum of Law, at 1.) Plaintiff additionally takes issue with the SSA's representation that it would conduct – and its ultimate failure to conduct – a third search of the same data systems for responsive documents. As to the first contention, the agency, through Egan, has affirmed that it produced all the documents it located. As to the second issue, there appears to have been a miscommunication between counsel for the SSA and Plaintiff about the search the agency was conducting. (*See* Doc. Nos. 25, 27, 29.) In its reply brief, the agency explains that its third production occurred as a result of receiving a broader Consent for Release of Information, which allowed the agency to re-check documents already located and reproduce certain documents in unredacted form. (Doc. No. 43, Defendant's Reply Memorandum of Law, at 4-5; Egan Decl. ¶¶ 30-32.)

Plaintiff contends that the agency has acted in bad faith given its failure to timely respond to the FOIA request initially, its failure to correct his understanding of what the third "re-check" entailed, and its failure to provide an explanation about whether there are other documents outside the scope of the FOIA request that exist. None of these allegations warrant continuation of this matter.

An agency's initial delay in responding to a FOIA request – even delays of several years – is not evidence of bad faith. *See Grand Central P'ship*, 166 F.3d at 489; *Goland*, 607 F.2d at 355 ("the [agency's] delay alone cannot be said to indicate an absence of good faith"); *Bartko v. U.S. Dep't of Justice*, 102 F. Supp. 3d 342, 353 (D.D.C. 2015) ("mere delay in responding to a FOIA request is routinely found to be insufficient to support a finding of bad faith" (citing cases); *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 108 (D.D.C. 2010) (holding that agency's failure to produce documents until after litigation commenced did not constitute evidence of bad faith). Here, the agency promptly searched for and produced records upon being served with the complaint in this case.

Likewise, the government's inability to locate the documents Plaintiff believes should exist is not an indication of bad faith if its search was otherwise reasonable. Technical failings and gaps in records located do not suggest bad faith if the method of the search was reasonable. *Garcia*, 181 F. Supp. 2d at 367 (citing *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1202 (D.C. Cir. 1991)). The fact that the SSA undertook a supplemental search and located additional records after working with Plaintiff's counsel suggests a "stronger, rather than a weaker, basis" for accepting the reasonableness of the search. *Meeropol*, 790 F.2d at 953 (internal quotation marks and citations omitted); *accord Conti*, 2014 WL 1274517, at *15. The

agency has adequately explained its search methodology and clarified what it did after the second search.

Finally, the agency is not required to conduct a search beyond what is sought in the FOIA request. *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 83 F. Supp. 3d 92, 102 (D.D.C. 2015) (FOIA does not require agency to "answer questions" or "conduct research"). Rather, it is required to certify through an affidavit that it has conducted a reasonable search for the documents requested in the FOIA request. The agency has done this. Mr. Egan set forth the search methodology and locations searched, which this Court finds to be reasonable. He also affirmed that "SSA has not located any additional records responsive to the FOIA Request" and "has not withheld in full any responsive documents." (Egan Decl. ¶ 33.) The agency's declaration therefore establishes that all responsive records located during the agency's searches have been produced. Having searched only for documents within the scope of the FOIA request, the agency cannot be expected to have searched for and located documents outside the scope of the request and detailed the results of same for Plaintiff.

To the extent Plaintiff, through conversations with counsel for the SSA, sought to expand the scope of documents sought in the FOIA request, the SSA was under no obligation to perform additional searches to locate documents responsive to newly-added categories. *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) ("[A]dequacy [of an agency's search] is measured by the reasonableness of the effort in light of the specific request." (internal quotation marks and citation omitted)). "[N]o statute requires a court to allow FOIA modifications during the course of litigation." *Serv. Women's Action Network v. U.S. Dep't of Defense*, No. 11-cv-1534 (SRU), 2013 WL 1149946, at *3 (D. Conn. Mar. 19, 2013).

Thus, it is proper on this motion for summary judgment for this Court to rule on "the only request actually before [it]." *Id.*, at *4; *see also Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 155 (D.D.C. 2010) ("[A]n agency need only conduct a search as to the original request, and not to subsequent additions or clarifications."). The files searched and the search methodology should have located documents about payment history, including payees, of Plaintiff's son's benefits, as well as correspondence and meetings with Plaintiff and the grandmother about Plaintiff's son's benefits and other documents responsive to Plaintiff's FOIA request. Of course, Plaintiff is free to serve another FOIA request on the agency requesting additional categories of documents not covered in the original FOIA request. But there is no basis for finding that the agency acted in bad faith in searching for records responsive to the FOIA request served in May of 2017.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment be GRANTED.

Dated: January 2, 2019
New York, New York

Respectfully submitted,

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge McMahon. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**